USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1898 UNITED STATES, Appellee, v. JOHN LEONARD ECKER, A/K/A LEONARD HOFFECKER, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Robert D. Richman, Assistant Federal Public Defender (Minnesota), _________________ with whom Scott F. Tilsen, Assistant Federal Public Defender _________________ (Minnesota), and Owen S. Walker, Federal Public Defender __________________ (Massachusetts), were on brief for appellant. Mary Elizabeth Carmody, Assistant United States Attorney, with _______________________ whom Donald K. Stern, United States Attorney, was on brief for _________________ appellee. ____________________ March 8, 1996 ____________________ STAHL, Circuit Judge. Appellant John L. Ecker asks STAHL, Circuit Judge. _____________ us to rule that the federal indictment against him must be dismissed because he has been found incompetent to stand trial and, having been found dangerous, has been indefinitely committed to federal custody. The district court denied Ecker's motion to dismiss the indictment. Ecker appeals. Because neither the relevant statutes nor caselaw require the dismissal of the indictment, we affirm. I. I. __ BACKGROUND BACKGROUND __________ In November 1989, Ecker was indicted in the District of Massachusetts for possession of a firearm by a felon in violation of 18 U.S.C. 922(g). Ecker has prior convictions for assault with a weapon, arson, breaking and entering, and burglary, and is therefore subject to the Armed Career Criminal Act, 18 U.S.C. 924(e); if convicted, he faces a mandatory minimum prison term of fifteen years. After federal authorities found that Ecker's mental illness rendered him incompetent to stand trial and dangerous to the public, he was committed to the custody of the Attorney General for hospitalization under 18 U.S.C. 4246. Now Ecker seeks to dismiss the indictment charging him as a felon in possession. A. Ecker's History in Federal Psychiatric Facilities _____________________________________________________ -2- 2 Ecker's history in federal psychiatric facilities is long and twisted; full detail is unnecessary to resolve the issue before us, so we summarize. From January 1990 through March 1993, federal authorities, pursuant to 18 U.S.C. 4241(d), conducted seven competency evaluations of Ecker. After five of these, Ecker was found incompetent, and on two occasions he was found competent. Authorities at one point reported that Ecker "displayed excellent knowledge of the federal mental health statutes," and concerns were raised that his mental health problems were of a questionable nature. In March 1993, federal authorities concluded "finally" that Ecker was not competent for trial and that it was unlikely that he would regain competency in the near future. The United States District Court for the District of Massachusetts, where the indictment was (and is) pending, determined that there was no likelihood of trial and ordered the Federal Medical Center in Rochester, Minnesota ("FMC- Rochester"), to determine if Ecker was dangerous and therefore subject to indefinite commitment under 18 U.S.C.  4246. The director of FMC-Rochester did find Ecker dangerous, and the United States Attorney for the District of Minnesota accordingly instituted commitment proceedings in the United States District Court for the District of Minnesota. In October 1993, the Minnesota district court -3- 3 ordered Ecker committed to the custody of the Attorney General under section 4246, and the Court of Appeals for the Eighth Circuit affirmed. United States v. Ecker, 30 F.3d _____________ _____ 966, 971 (8th Cir.), cert. denied, 115 S. Ct. 679 (1994). _____ ______ In October 1994, the staff at the Federal Medical Center in Springfield, Missouri ("FMC-Springfield"), where Ecker is currently in custody, filed an annual report of Ecker's mental condition as required by 18 U.S.C. 4247(e). The report stated that Ecker was "generally able to answer the panel's questions in a logical, coherent, and goal- directed manner." It went on, however, to conclude that "Mr. Ecker is currently a substantial risk to others or the property of others due to mental illness." The civil commitment statute, 18 U.S.C. 4246, requires Federal authorities to place Ecker in an appropriate state institution in his home state, Massachusetts, if possible. Officials at FMC-Springfield, however, determined that Massachusetts would not accept Ecker in a state institution because of the pendency of the federal indictment. Thus, Ecker remains hospitalized at FMC-Springfield. B. The District Court Order on Ecker's Motion to Dismiss _________________________________________________________ In the district court, Ecker advanced two grounds for dismissal of the indictment. First, he contended that the statute under which he was committed, 18 U.S.C. 4246, requires, upon commitment, dismissal of pending charges upon -4- 4 commitment. Second, he asserted that the pendency of the indictment interfered with his purported right to be placed in a state institution, depriving Ecker of his constitutional right to due process.  The district court denied Ecker's motion to dismiss the indictment, holding that the commitment statute did not require dismissal of the indictment, finding no support for Ecker's statutory argument in the statute's language, its legislative history, or in caselaw. The court also rejected Ecker's due process argument, concluding that "the statute cannot be fairly read to confer a liberty interest, protected by the Due Process Clause of the Fifth Amendment of the United States Constitution, in being committed to a state institution rather than a `suitable facility' chosen by the Attorney General." C. Ecker's Appeal __________________ Ecker appeals the district court's order denying his motion to dismiss the indictment, advancing only the statutory argument that 18 U.S.C. 4241 and 4246 require dismissal. Ecker has abandoned the argument he made below that the pendency of the indictment violates his due process rights. See United States v. Zannino, 895 F.2d 1, 17 (1st ___ _____________ _______ Cir.) (arguments not raised squarely are waived), cert. _____ denied, 494 U.S. 1082 (1990). ______ -5- 5 II. II. ___ DISCUSSION DISCUSSION __________ A district court's resolution of a question of statutory interpretation engenders de novo review in the __ ____ court of appeals. Riva v. Massachusetts, 61 F.3d 1003, 1007 ____ _____________ (1st Cir. 1995). Ecker, at the outset, concedes that "[n]either 18 U.S.C. 42411 nor 18 U.S.C. 42462 addresses what happens  ____________________ 1. Section 4241 provides procedures for evaluation of a defendant's competency to stand trial. If the court finds the defendant incompetent after an psychiatric examination and a hearing, the court commits the defendant to the custody of the Attorney General. The Attorney General then hospitalizes the defendant for up to four months "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." The Attorney General may also hospitalize the defendant for an "additional reasonable time" beyond four months if the court finds a substantial probability that competency will be regained. If the defendant remains incompetent at the end of those time periods, the defendant is subject to commitment for dangerousness under 18 U.S.C. 4246. If not committed thereunder, the defendant is released.  Section 4241 makes no reference to the pendency or dismissal of the indictment. 2. Section 4246 provides for the commitment and hospitalization of a dangerous person "whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d) [i.e., due to incompetency to stand trial], or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." Upon certification of dangerousness by the director of the hospital facility, the court conducts a hearing, and shall commit to the custody of the Attorney General a person "suffering from mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." Such commitment is of indefinite duration, but the Attorney General must make -6- 6 to a pending indictment when a defendant is determined under section 4241 to be incompetent to stand trial and is subject to indefinite civil commitment under section 4246."3 That concession is virtually dispositive of Ecker's appeal -- there is nothing in the statute's language that requires dismissal of a pending indictment. The statutory silence is not surprising. Congress, we have little doubt, intended to leave the decision about the disposition of pending charges to the case-by-case discretion of the prosecutors. A. Ecker's Arguments _____________________ Although conceding that the statute is silent, Ecker argues that the structure of the relevant statutes, their legislative history, and the caselaw compel the conclusion that Congress intended to require dismissal of a pending indictment upon commitment. We disagree, and address each of Ecker's arguments in turn, explaining why we find them unpersuasive.  ____________________ reasonable efforts place the person in the custody and care of the state in which the person is domiciled. Although section 4246 recognizes that criminal charges may be dismissed because of a person's mental illness, there is nothing in the language of the statute requiring such dismissal. 3. Nor do the statutes address the pendency or dismissal of an indictment of a defendant found long-term incompetent under section 4241, but not found dangerous under section 4246. -7- 7 First, Ecker asserts that section 4246 applies only  to individuals "who no longer realistically can be considered to be awaiting trial because there is little possibility of their regaining competency," quoting United States v. ______________ Charters, 829 F.2d 479, 485 (4th Cir. 1987) (not addressing ________ dismissal of indictment), reh'g, 863 F.2d 302 (4th Cir. _____ 1988), cert. denied, 494 U.S. 1016 (1990). From that _____ ______ premise, Ecker concludes that "Congress plainly intended that the liberty of such a person would be restricted only by the requirements of section 4246, not as a result of the continued pendency of an indictment." That argument is unconvincing. Ecker's liberty is not restricted by the pendency of the indictment, but rather by section 4246 (which authorizes his hospitalization). The only effect that the pending indictment has on Ecker's "liberty" results from a Massachusetts state policy4 of refusing to accept mentally ill federal detainees who are subject to a pending federal indictment. We fail to see how that state policy, or its effect on Ecker, can indicate that Congress intended section 4246 to require dismissal of any pending indictment.  ____________________ 4. The record and the parties' briefs do not indicate whether this "policy" is based on statute, regulation, or the discretion of state officials. The district judge below assumed, without so finding, that state officials refused to accept Ecker, but the court based that assumption "on hearsay and not on competent evidence." -8- 8 Ecker's second argument is that there is no statutory mechanism to revisit the issue of competency once a defendant is committed as dangerous under section 4246. While recognizing that section 4247 requires annual reports on the "mental condition" of a person committed under section 4246, he asserts that such reports address dangerousness and _____________ not competency to stand trial. That argument finds some __________ support in the October 1994 annual report on Ecker, which concluded that he was still dangerous without addressing his competency for trial on the pending indictment. Ecker argues that nothing in this statutory scheme suggests that Congress envisioned further competency determinations once a defendant is indefinitely committed as dangerous under section 4246. This "unexplained gap," he contends, indicates that Congress must have intended that a pending indictment would be dismissed once a defendant has been committed for dangerousness. We agree that the statute does not expressly address the reevaluation of trial competency of a defendant committed as dangerous under section 4246. The statute does, however, provide for annual reports by the facility director "concerning the mental condition of the person and containing recommendations for the need for his continued hospitalization." 18 U.S.C. 4247(e)(1)(B). This broad requirement of a report on "mental condition" would seemingly -9- 9 allow the facility director to report to the court that a defendant has regained competency. Moreover, a defendant or his counsel may bring any relevant change in condition, or a request for release, to the court's attention through a motion for a hearing under section 4247(h). In any event, it is far too great a leap to conclude from this asserted shortcoming in the statutory scheme that Congress intended to require the dismissal of a pending indictment once a defendant has been committed for dangerousness. Congress could plausibly have expected that a prosecutor bent on trying a committed person would file a motion under section 4241 for a new evaluation of competency.5 On the other hand, the asserted "gap" might be the result of simple oversight or poor draftsmanship, due in part, perhaps, to an expectation that prosecutors will usually exercise their discretion to dismiss indictments against persons committed under section 4246. An appropriate judicial response to this statutory shortcoming would be to order further competency reevaluations if requested by either the government or a defendant, rather than a judicial rewriting of the statute to require dismissal of an indictment that the prosecutor seeks to preserve.  ____________________ 5. Section 4241 provides in relevant part: "At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant." -10- 10 The third argument advanced by Ecker is more difficult to decipher than the preceding two. He asserts that section 4246 was "clearly designed" to deal only with persons about to be released from the federal criminal justice system, and therefore Congress must have intended that charges be dropped when a defendant is committed under section 4246. Ecker demonstrates this "clear design" by pointing out that two of the three categories of persons covered by section 4246 (those whose sentence is about to expire and those against whom all charges have been dismissed because of mental illness) are no longer subject to punishment and would be released but for the provisions of section 4246. Then Ecker states that "it would be strange, indeed, to include in the same statute, without explanation or separate procedures, a group of people still subject to indictment and trial." It is more plausible, he argues, that those defendants subject to section 4246 after being found incompetent under section 4241 "would also be subject to release due to the dismissal of the charges."  While it is perhaps odd that the statute lacks express procedures for reevaluating the competency of a person committed under section 4246, it would be far more "strange" for Congress to have intended a statutory requirement that an indictment be dismissed automatically on commitment, yet never mention that requirement in the -11- 11 statute. Again, all that Ecker has done is point to some ambiguities in certain procedural aspects of section 4246, and then attempt to bootstrap those ambiguities into an implied requirement that a pending indictment must be dismissedwhenever thatstatute isinvoked. We arenot persuaded. As further support for his third argument (that it would be "strange" if the statute did not require the dismissal of an indictment), Ecker directs us to the statute's legislative history. We are reluctant to take that direction, because a court "should resort to legislative history . . . [only] when the words of a statute give rise to ambiguity or when they lead to an unreasonable interpretation." United States v. O'Neil, 11 F.3d 292, 297 _____________ ______ (1st Cir. 1993). The words of the statutes at issue here do neither. In an abundance of caution, however, we have reviewed the legislative history cited by Ecker and find it to contain nothing that would lead us to conclude that Congress intended the statute to require, sub silentio, the ___ ________ dismissal of pending charges. See S. Rep. 225, 98th Cong., ___ 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3404- _________ __ 36. As the Supreme Court remarked in construing the federal civil commitment statute that preceded the current section 4246, "this is a case for applying the canon of construction of the wag who said, when the legislative history is -12- 12 doubtful, go to the statute." Greenwood v. United States, _________ ______________ 350 U.S. 366, 374 (1956). As a fourth argument, and as support for the first three, Ecker quotes the Eighth Circuit's opinion in his earlier appeal of his commitment. In rejecting Ecker's argument that it was unreasonable to hold him for nearly four years before committing him under section 4246, the Eighth Circuit stated that: "At all times, Ecker remained subject to criminal process calling for a mandatory minimum sentence of fifteen years imprisonment. He remained subject to possible _______________________________ trial until the final judicial determination of incompetency _____________________________________________________________ on April 16, 1993." Ecker, 30 F.3d at 969 (emphasis added). _____ The Eighth Circuit, however, was not concerned with the dismissal or validity of the indictment after Ecker's section 4246 commitment; the issue it faced was the duration of Ecker's detention for determination of competency under section 4241, and whether that lengthy confinement was a due process violation. The Eighth Circuit had no reason to consider whether the indictment remained valid after Ecker was committed under section 4246; if the quoted statement addresses that question at all, it is mere dictum. Finally Ecker points out that the executive branch of the federal government is in a "peculiar position" because section 4246 requires the Attorney General to "make all reasonable efforts" to place Ecker in a state institution, -13- 13 but the United States Attorney in Massachusetts is preventing that placement by not dropping the indictment. Ecker adds that "the continued validity of the indictment interferes with defendant's statutory right to state placement." This argument invites a number of obvious rejoinders. First, the government has the discretion to solve the dilemma by dismissing the charges. Second, the Attorney General is only required to make "reasonable efforts" to place Ecker in state care. The Massachusetts policy denying placement of persons under federal indictment prevents Ecker's placement, and we would not conclude (nor does Ecker argue) that it is "unreasonable" not to drop the charges in order to facilitate placement. Third, while the statute imposes a duty on the Attorney General to attempt to place Ecker with the state, we do not conclude that it endows Ecker with a "right" to state placement. None of Ecker's statutory arguments persuade us that Congress intended sections 4241 and 4246 to require sub ___ silentio the dismissal of a pending indictment. ________ B. Caselaw ___________ Our conclusion is not altered by our analysis of the few relevant cases. The district court's order denying Ecker's motion to dismiss the indictment is consistent with the Supreme Court's decision in Greenwood v. United States, _________ _____________ 350 U.S. 366 (1956). The Court in Greenwood stated that "the _________ -14- 14 pending indictment persists" even after the defendant has been found unlikely to recover competency and has been committed as dangerous. Id. at 375. ___ Although Greenwood was not decided under the _________ current statutory scheme, we believe that the holding is equally valid under the new scheme. The prior statutes were strikingly similar to the current ones. The primary difference relevant to this appeal is that the old scheme authorized detention of an incompetent indefinitely, "until the accused shall be mentally competent to stand trial." Law of Sept. 7, 1949, ch. 535, 4246, 63 Stat. 686 (1949) (current version at 18 U.S.C. 4246). The present statute authorizes detention of an incompetent defendant only for four months, and then for an additional reasonable time if there is a substantial possibility that he will regain competency. This limitation on the detention of incompetent defendants was dictated by Jackson v. Indiana, 406 U.S. 715, _______ _______ 738 (1972), which struck down Indiana's statute authorizing indefinite commitment of incompetent defendants who were not dangerous as violative of due process. See S. Rep. 225, 98th ___ Cong., 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 3182, _________ __ 3418. Thus, under the new scheme, an incompetent defendant must be released after four months if recovery is unlikely, 18 U.S.C. 4241(d), or else committed indefinitely if found dangerous, 18 U.S.C. 4246. We see nothing about the -15- 15 statutory changes required by Jackson v. Indiana,6 406 U.S. _______ _______ at 738, nor any other change in the statutory scheme, that casts doubt on Greenwood's holding that the indictment _________ survives commitment, 350 U.S. at 375. Nor does the pendency of the indictment beyond Ecker's commitment offend Jackson's _______ mandate that a permanently incompetent defendant must be released or else civilly committed. See Jackson, 406 U.S. at ___ _______ 738. Ecker attempts to advance his cause by misleadingly quoting a recent Ninth Circuit case: "The fact that an indictment is no longer in place is irrelevant to the governmental interests at stake: `the control and treatment of dangerous persons within the federal criminal justice system who are incompetent to stand trial.'" United States _____________ v. Sahhar, 56 F.3d 1026, 1029 (9th Cir.), cert. denied, 116 ______ _____ ______ S. Ct. 400 (1995). Ecker argues that the governmental interests in his case, as in Sahhar, are fully vindicated by ______  ____________________ 6. The Court stated in Jackson v. Indiana that "[d]ismissal _______ _______ of charges against an incompetent accused has usually been thought to be justified on grounds not squarely presented here: particularly, the Sixth-Fourteenth Amendment right to a speedy trial, or the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence." 406 U.S. at 740 (citing as support only one state decision and two federal district court decisions). The Jackson Court _______ did not reach the issue of dismissal of charges, however. Id. Ecker has not advanced either of these grounds for ___ dismissal of his indictment. Moreover, we will not, based solely on the quoted dictum in Jackson, attribute to Congress _______ an unspoken intent to require that a pending indictment be dismissed. -16- 16 section 4246, rendering the indictment irrelevant. But in Sahhar, the indictment was dismissed before the appellant was ______ ______ committed; the issue was whether it was unconstitutional to commit a person under section 4246 after detaining him for longer than the maximum term of imprisonment for the crime charged. Id. at 1028. The Ninth Circuit held that such ___ commitment was constitutional given the federal interest in "control and treatment of dangerous persons within the federal criminal justice system"; the fact that an indictment was no longer in place was "irrelevant" to that interest. Id. at 1029. The district court had erred in "tying the ___ continuing validity of appellant's non-punitive section 4246 commitment to the punitive objectives of the original criminal charge." Id. In other words, once the indictment ___ was dismissed, the only remaining government interest was public safety, not the punishment of the offender. In no way did Sahhar involve the question whether an indictment must be ______ dismissed when a person is committed under section 4246.  Because the prosecutor wishes to keep Ecker's indictment pending, the government has a continuing punitive ________ interest in Ecker. That interest is not addressed by section 4246 commitment, which terminates if Ecker's condition improves. Ecker's out-of-context quotation of Sahhar is ______ disingenuous and does not enlighten. III. III. ____ -17- 17 CONCLUSION CONCLUSION __________ The relevant statutes are silent as to dismissal of a pending indictment upon commitment for dangerousness. None of Ecker's arguments persuade us that Congress intended that upon commitment under section 4246 any pending indictment must be dismissed. The district court's order denying Ecker's motion to dismiss the indictment is affirmed. ________ -18- 18