**UNITED STATES of America, Plaintiff,**

v.

**Luis TRILLO–CERDA, Defendant.**

No. 01–CR–3036.

United States District Court, S.D. California.

Nov. 25, 2002.

Dennise Willett, United States Attorney's Office, San Diego, CA, for United States.

Kasha Pollreisz, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant.

### ORDER

RHOADES, District Judge.

### I. Overview

The court has determined that defendant Luis Trillo–Cerda ("defendant") is not competent to stand trial in an unmedi-

---

cated state, and the court has concluded that it will not order that defendant be forcibly medicated. Thus, the issue confronting the court is whether the court must simply release defendant, or whether defendant is subject to civil commitment proceedings under 18 U.S.C. § 4246.

## II. Background

18 U.S.C. § 4241 provides that prior to the sentencing of a defendant, the court shall order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). In an order filed November 20, 2001, the court concluded that there was reasonable cause to believe that defendant might be suffering from a mental disease or defect rendering him incompetent to stand trial. Accordingly, the court ordered a mental competency evaluation in accordance with 18 U.S.C. § 4241(b) and subsequently held a hearing in accordance with 18 U.S.C. §§ 4241(c) and 4247(d). On February 19, 2002, the court found defendant to be incompetent to stand trial and therefore committed defendant to the custody of the Attorney General in accordance with 18 U.S.C. § 4241(d), which provides that, if the defendant is determined to be incompetent, the court shall commit the defendant to the custody of the Attorney General for a reasonable period of time, not to exceed four months, in order to determine whether "there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d)(1). Defendant was placed at the U.S. Medical Center for Federal Prisoners ("USMC–Springfield") in Springfield, Missouri.

At the end of the four month period, the government filed a motion to allow defendant's continued hospitalization pursuant to 18 U.S.C. § 4241(d)(2), which provides that the defendant may be hospitalized for an additional reasonable period of time until "his mental condition is so improved that the trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed." In an order filed July 31, 2002, the court extended defendant's period of custody until November 27, 2002. In an order filed September 11, 2002, the court posed various questions to medical staff at Springfield regarding defendant's treatment and requested a response to those questions on or before September 20, 2002.

In a letter to the court dated September 19, 2002, the court was informed that it was the belief of the USMC–Springfield clinical staff that defendant is competent to stand trial. Then, without a court order, USMC–Springfield sent defendant back to San Diego, where he is currently confined at the Metropolitan Correctional Complex ("MCC").

The court held a hearing on September 30, 2002 pursuant to 18 U.S.C. § 4241(e) to determine defendant's competence. At the hearing, the parties stipulated to defendant's incompetence despite the certificate of competency filed by USMC–Springfield. The court agreed with the parties that unless defendant is forcibly medicated, he is incompetent to stand trial. The court also informed the parties that it will not order defendant's continued forcible medication. Thus, the court determined that defendant is incompetent to stand trial.

The court subsequently requested additional briefing from the parties on the issue of whether defendant is now subject

to the provisions of 18 U.S.C. § 4246, which sets forth a detailed procedure for handling federal pretrial detainees who are determined to be both incompetent to stand trial and a danger to other persons or property if released.

The first step of the procedure is that there must be a certification that the pretrial detainee "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another ...." 18 U.S.C. § 4246(a). This certification is to be made by "the director of a facility in which a person is hospitalized...." 18 U.S.C. § 4246(a). The court must then hold a hearing. *See* 18 U.S.C. § 4246(c). "If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4246(d).

This issue of the applicability of § 4246 arises because there is ample evidence in the record to suggest that defendant will present a danger to society if he is released, yet there is some question about whether defendant is "hospitalized" within the meaning of § 4246 and, if not, whether this fact precludes USMC–Springfield from providing a dangerousness certification under § 4246.

## III. Analysis

The evidence in the record suggests that, if given the opportunity, USMC–Springfield might certify defendant as dangerous within the meaning of § 4246, as there is substantial evidence of violent behavior on defendant's part. For example, defendant himself reported to USMC–Springfield clinical staff that he committed a homicide for which he spent 12 years in prison. *See* February 6, 2002 report of Dr. Kalish, pp. 2, 3. While at USMC–Springfield, defendant threatened USMC–Springfield staff with violence and actually assaulted a USMC–Springfield staff member and another inmate. *See* Involuntary Medication Hearing Appeal Response p. 4, attached to July 12, 2002 Letter from Bill Hedrick, Warden of USMC–Springfield. Moreover, Dr. Frederick has opined that "Mr. Trillo–Cerda presents a serious risk of injury to others and is at risk for significant property damage as the result of mental disorder were he to be released from custody." *See* September 19, 2002 Forensic Report p. 9, attached to September 19, 2002 Letter from Bill Hedrick, Warden of USMC–Springfield. Nonetheless, despite this evidence of dangerousness, there is some question as to whether the certification can be made given that defendant is not currently physically confined at USMC–Springfield.

18 U.S.C. § 4241(e) provides that "[w]hen the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment." Here, in conjunction with a certification made pursuant to § 4241(e), USMC–Springfield returned defendant to this jurisdiction. It is unclear whether USMC–Springfield intended to officially discharge defendant or whether it simply returned him to this district for the purpose of allowing defendant to participate in the competency proceeding. As a preliminary matter, it is questionable whether USMC–Springfield could discharge defendant without a court order.

The court notes that § 4241(e) provides that "[i]f, *after the hearing,* the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, *the court shall order his immediate discharge from the facility in which he is hospitalized* and shall set the date for trial." (emphasis added). However, "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246." 18 U.S.C. § 4241(d). Based upon these two provisions of § 4241, it would appear that USMC–Springfield could not discharge defendant without a court order. If such is the case, then it would appear that defendant is still "hospitalized" for purposes of § 4246 even if he is not currently physically present there. Consequently, given the court's determination that defendant is not competent to proceed to trial and will not be competent any time in the near future, defendant would clearly be subject to the provisions of § 4246.

Nonetheless, even if USMC–Springfield did officially discharge defendant, no authority has been cited to the court that suggests that Congress intended to preclude a treatment facility that previously treated a defendant from certifying him as dangerous where such a certification is warranted by the facts and where the treatment facility discharged the defendant without the court order contemplated by § 4241(e). Underlying §§ 4241–4248 "is the concept of some protection to society as well as the preservation of the rights of an accused person." *United States v. Barnes,* 175 F.Supp. 60, 65 (S.D.Cal.1959); *see also United States v. Sahhar,* 56 F.3d 1026 (9th Cir.1995) (noting that § 4246 implicates "important federal concerns of protecting society from dangerous criminal defendants and controlling and treating dangerous persons within the federal criminal justice system who are incompetent to stand trial."). It would undermine that concept to allow the release of defendant into society without a dangerousness determination being made as contemplated by the statute simply because defendant was transported back to this district court prior to the court making a competency determination given the ample evidence in the record to suggest that in fact defendant is a danger to society.

Although the court previously raised the question of whether *Weber v. United States District Court,* 9 F.3d 76 (9th Cir. 1993), precluded the court from giving USMC–Springfield the opportunity to certify defendant as dangerous, the court concludes that *Weber* is not controlling because of the different factual and procedural posture of that case. Whereas defendant Trillo–Cerda is a pretrial detainee, in *Weber,* the defendant had been convicted of making threats against the President of the United States. Pursuant to a motion filed by the government, the district court concluded that the defendant suffered from a mental disease or defect and imposed a provisional sentence during which the defendant was to be hospitalized for treatment at USMC–Springfield pursuant to 18 U.S.C. §§ 4244(d) and 4247, sections that are not at issue here. After approximately one year, the director of USMC–Springfield certified that the defendant was recovered from his mental disease or defect to the extent that he no longer was in need of treatment. The director recommended that the court proceed to final sentencing. The district court tacitly accepted USMC–Springfield's competency assessment and conducted a sentencing hearing at which it sentenced the defendant to twenty-six months of im-

prisonment. At the same hearing, the court found that USMC–Springfield had not made a dangerousness evaluation under 18 U.S.C. § 4246 and noted that but-for the issue of whether the defendant should be confined pursuant to § 4246, the defendant would be entitled to release because, with good time credits, he had served his time. Thus, the district court stayed the entry of the defendant's sentence and ordered that the defendant be returned to the medical facility for a determination on whether the defendant's release would constitute a danger to the community under 18 U.S.C. § 4246.

The Ninth Circuit held that the district court lacked the authority to initiate a hearing to determine whether the defendant should continue his psychiatric treatment, noting *inter alia* that § 4246 "indicates that the director of the facility is to make the initial determination regarding the dangerousness issue." However, more importantly, the court also noted that Weber had been determined to be competent by the court, and therefore § 4246 was not applicable *because § 4246 only applies where the defendant is determined to be incompetent.*

Here, all agree that defendant in his current unmedicated state is incompetent, and the court has so held. Thus, § 4246 *is* otherwise applicable. Exhaustive research has failed to reveal case law holding that where a federal pretrial detainee is determined to be incompetent under § 4241, a dangerousness certification under § 4246 is precluded simply because the defendant happens not to be in the physical custody of the treatment facility where he was originally committed. Moreover, the Ninth Circuit case of *United States v. Ohnick,* 803 F.2d 1485 (9th Cir.1986) suggests otherwise, although admittedly the issue here was not raised or decided on appeal. In *Ohnick,* the defendant was temporarily committed to USMC–Spring-field for treatment and evaluation. Then, as here, the defendant appeared before the California district court for a final determination on his competency to stand trial. The district court concluded that the defendant was not competent and would not be rendered competent in the foreseeable future. The Ninth Circuit noted that "[a]s a result, [the defendant] was then subject to the provisions of 18 U.S.C. § 4246." Given that by enacting §§ 4241–4248 Congress intended to provide protection for society as well as the rights of the defendant, *see Barnes,* 175 F.Supp. at 65, the court concludes that there is no legal basis here for precluding USMC–Springfield from now certifying defendant as dangerous pursuant to § 4246, should it believe that such a certification is warranted.

Finally, the court notes that, after the court orally announced its ruling, defense counsel argued to the court that the court's ruling directly conflicted with the First Circuit's decision in *United States v. Ecker,* 78 F.3d 726, 728 n. 1 (1st Cir.1996). Not only is *Ecker* out-of-circuit authority, but defendant's reliance on *Ecker* is puzzling. In *Ecker,* the defendant was determined to be mentally incompetent and was certified to be dangerous. Thus, he was committed to the Attorney General for hospitalization under 18 U.S.C. § 4246. The defendant sought to dismiss the indictment, arguing that § 4246 requires dismissal of pending charges upon commitment. He also argued that the pendency of the indictment interfered with his purported right to be placed in a state institution, thereby depriving him of the right to due process. The First Circuit rejected these arguments and affirmed the district court's denial of the defendant's motion to dismiss. The court has again reviewed footnote 1, relied upon by defense counsel, and concludes that footnote 1 does nothing more than set forth the basic statutory provisions already discussed in the court's order. Footnote 1

does not address the application of those statutory provisions to any factual scenario, let alone the factual scenario at issue here. Moreover, the court notes that footnote 1 states that "[i]f the defendant remains incompetent at the end of those time periods, the defendant is subject to commitment for dangerousness under 18 U.S.C. § 4246." *Ecker*, 78 F.3d at 728 n. 1. This court has concluded that defendant Trillo–Cerda remains incompetent and therefore has concluded that defendant is subject to commitment for dangerousness under § 4246. The court's ruling is entirely consistent with footnote 1.

## IV. Conclusion

The parties and the court agree that defendant is incompetent to stand trial in his current unmedicated state and that defendant will not be competent to stand trial any time in the near future in light of the court's ruling that defendant will no longer be forcibly medicated. Accordingly, USMC–Springfield shall advise the court within 10 days whether it has enough information, based on the information gathered, to make a determination of whether defendant is dangerous under § 4246. If USMC–Springfield does not have sufficient evidence in its possession to make this determination, it is to advise the court whether it needs information about defendant since his return to San Diego. If the court is so advised, the court will order that MCC forward any recent information it has on defendant. If USMC–Springfield advises the court that it must observe defendant in person to determine whether he is presently dangerous, the court will order that defendant be returned to USMC–Springfield.

**IT IS SO ORDERED.**

See also 2002 WL 31995308.

