# United States Court of Appeals
## For the First Circuit

No. 09-1596

UNITED STATES OF AMERICA,

Petitioner, Appellant,

v.

JOHN CHARLES VOLUNGUS,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin and Selya, Circuit Judges,
and Laplante,* District Judge.

Samantha L. Chaifetz, Attorney, Appellate Staff, Civil Division, United States Department of Justice, with whom Tony West, Assistant Attorney General, Michael K. Loucks, Acting United States Attorney, Beth S. Brinkmann, Deputy Assistant Attorney General, and Mark B. Stern, Attorney, Appellate Staff, were on brief, for appellant.
Judith H. Mizner, Assistant Federal Public Defender, for appellee.

January 8, 2010

---

*Of the District of New Hampshire, sitting by designation.

**SELYA**, **Circuit Judge**.  We are called upon to determine the constitutionality of a provision of the Adam Walsh Child Protection and Safety Act (Walsh Act), Pub. L. No. 109-248, 120 Stat. 587 (2006), a recently enacted federal law that provides in pertinent part for the civil commitment of a sexually dangerous person already in federal criminal custody in lieu of that person's release upon service of his full sentence.  Id. § 320, 120 Stat. at 619-22, codified at 18 U.S.C. §§ 4241, 4247-4248 (which we shall call, as a shorthand, section 4248).  The district court concluded that Congress lacked constitutional authority to enact this civil commitment provision and, therefore, dismissed the government's petition to enforce it against the respondent, John Charles Volungus.  United States v. Volungus, 599 F. Supp. 2d 68, 77-78, 80 (D. Mass. 2009).  The government appeals from that ruling.

After careful consideration, we hold that the civil commitment provision comes within the legitimate scope of congressional power conferred by the Necessary and Proper Clause of the federal Constitution.  Consequently, we reverse the decision below and remand for further proceedings.

## I.  BACKGROUND

The challenged provision of the Walsh Act authorizes the government to seek court-ordered civil commitment of "sexually dangerous" persons who are in the custody of the federal Bureau of Prisons (BOP).  18 U.S.C. § 4248(a).  A "sexually dangerous person" within the meaning of the Walsh Act is one "who has engaged or

-2-

attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others."  Id. § 4247(a)(5).  A person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. § 4247(a)(6).

Mechanically, the Walsh Act's civil commitment provision operates in the following manner.  A responsible federal official (the Attorney General, the director of the BOP, or the designee of either) may initiate commitment proceedings by petitioning the federal district court in the judicial district in which a targeted person is confined.  Id. § 4248(a).  The petition must certify to the court that the target, whom we shall call the respondent, "is a sexually dangerous person."  Id.  The filing of the petition stays the respondent's release from federal custody, notwithstanding the expiration of his sentence, "pending completion of procedures" described in the Walsh Act.  Id.

Those procedures include an opportunity for the district court to order a mental health examination and to hold a "hearing to determine whether the [respondent named in the petition] is a sexually dangerous person."  Id. § 4248(a)-(c); see id. § 4247(b)-(c).  At the hearing, the respondent is entitled to counsel and to the opportunity "to testify, to present evidence, to subpoena

-3-

witnesses on his behalf, and to confront and cross-examine" the government's witnesses.  Id. § 4247(d).

In prosecuting such a petition, the government has the burden of proving "by clear and convincing evidence that the [respondent] is a sexually dangerous person."  Id. § 4248(d).  If the court finds that the government has carried this heavy burden, it must commit the respondent to the custody of the Attorney General.  Id.  The Attorney General is directed to defer to available state custody; that is, to "release the [respondent] to the appropriate official of the State in which [he] is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment."  Id.  In addition, the Attorney General is required "to make all reasonable efforts to cause such a State to assume responsibility."  Id.  If such efforts prove unsuccessful, the Attorney General must retain federal custody and place the respondent in a suitable facility for treatment until either an eligible state "will assume . . . responsibility" or the respondent's condition is ameliorated to the extent that "he can safely be released, either conditionally or unconditionally."  Id.

The Walsh Act provides an array of post-commitment safeguards to ensure periodic reevaluation of a committed person's overall mental condition, potential dangerousness, and suitability for release.  These include a requirement for an annual report setting forth a recommendation for or against continued commitment. Id. § 4247(e)(1)(B).  If the director of the facility in which the

-4-

person is confined determines that he is no longer sexually dangerous, the director must notify the court, which must either order the person's release or schedule a hearing to determine whether release is appropriate. Id. § 4248(e). The person himself, through counsel, may petition the court for such a hearing, but not within 180 days after a judicial determination that commitment is appropriate. Id. § 4247(h).

We turn now from the general to the specific. The respondent here, Volungus, was convicted of receipt of child pornography by means of a computer, possession of child pornography, and use of a facility of interstate commerce to attempt to persuade a minor to engage in a sexual act. See 18 U.S.C. §§ 2252(a)(2), 2252A(a)(5)(A), 2422(b). In June of 1999, the United States District Court for the Western District of Kentucky sentenced him to serve a 53-month incarcerative term, to be followed by a period of supervised release. The respondent served his initial prison sentence and embarked on his term of supervised release. He violated the conditions of his supervised release and, as a result, was haled into the United States District Court for the Northern District of New York. That court revoked the supervised release term and remanded him to federal prison for an additional 23-month period of incarceration.

Over time, the BOP housed the respondent in a number of different correctional facilities. The last of these was the Federal Medical Center Devens, in Ayer, Massachusetts (a prison

hospital). The respondent was in custody there when the government, before the expiration of his extended term of immurement, commenced a civil commitment proceeding under section 4248 in the United States District Court for the District of Massachusetts. The respondent's release from prison, scheduled to take place when the sentence imposed following the revocation of supervised release expired on February 15, 2007, was stayed pending the outcome of the commitment proceeding. See 18 U.S.C. § 4248(a).

The respondent moved to dismiss the proceeding, making a facial challenge to the constitutionality of section 4248. The district court obliged, declaring the Walsh Act's civil commitment regime unconstitutional because Congress lacked the authority to enact it. See Volungus, 599 F. Supp. 2d at 77-78. The court, however, stayed the respondent's release pending the consummation of this appeal. The respondent remains at Devens.

In this venue, the government argues that Congress had constitutional authority to enact section 4248 under both the Commerce Clause and the Necessary and Proper Clause. The two courts of appeals that thus far have examined the constitutionality of section 4248 have reached divergent conclusions. Compare United States v. Tom, 565 F.3d 497, 504-05 (8th Cir. 2009) (upholding the provision), with United States v. Comstock, 551 F.3d 274, 284 (4th Cir. 2009) (contra). The Supreme Court has granted certiorari in Comstock to resolve this conflict. 129 S. Ct. 2828 (2009). We decide this appeal now, however, because the timing of the Supreme

Court's decision is uncertain, the respondent remains confined despite the expiration of his criminal sentence, and other petitions are currently being litigated in the courts of this circuit.

## II.  ANALYSIS

We review de novo challenges to the constitutionality of federal statutes.  United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003); United States v. Bongiorno, 106 F.3d 1027, 1030 (1st Cir. 1997).  Before undertaking this review, we acknowledge some first principles.

As long as Congress acts within the sphere of its constitutional authority, it has the power to make criminal laws and to fashion penalties for noncompliance therewith.  See Gonzales v. Raich, 545 U.S. 1, 15-17 (2005); Champion v. Ames, 188 U.S. 321, 358-60 (1903); United States v. Fox, 95 U.S. 670, 672 (1877).  In the criminal law arena, the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, typically furnishes the source of this congressional power.  See, e.g., United States v. Lewis, 554 F.3d 208, 214 n.7 (1st Cir. 2009) (discussing source of Congress's power to outlaw transmission of child pornography); United States v. Meade, 175 F.3d 215, 224-25 (1st Cir. 1999) (discussing source of Congress's power to criminalize possession of a firearm by one subject to an anti-harassment order).

A certain degree of ancillary authority accompanies the power to enact and enforce criminal laws.  One example of this

ancillary authority is Congress's power to construct and operate a prison system. See, e.g., Ex parte Karstendick, 93 U.S. 396, 400 (1876); Estabrook v. King, 119 F.2d 607, 610 (8th Cir. 1941). A related (and subsidiary) example is Congress's authority to commit mentally ill prison inmates while they are in federal custody. See, e.g., Greenwood v. United States, 350 U.S. 366, 375 (1956); see also Jackson v. Indiana, 406 U.S. 715, 726 (1972) (acknowledging that Greenwood settled any question of the federal government's "substantive power to commit"). These ancillary strands of power descend from the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18. See Greenwood, 350 U.S. at 375.

The Necessary and Proper Clause imbues Congress with a measure of legislative discretion to enact laws that are incidental to the furtherance of legislation authorized under more specific powers conferred by the Constitution. See McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 414-15, 417, 420 (1819). The Clause is a bit of an anomaly. Although the Constitution enshrines the principle of a limited federal government, see Gregory v. Ashcroft, 501 U.S. 452, 457 (1991), the Necessary and Proper Clause injects some legislative flexibility into the equation. It is a broad grant of incidental power that enables Congress to further constitutionally legitimate ends. See Sabri v. United States, 541 U.S. 600, 605 (2004); Jinks v. Richland County, 538 U.S. 456, 462-63 (2003); see also The Federalist No. 33 (Alexander Hamilton). As Chief Justice Marshall aptly observed: "Let the end be legitimate,

let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." McCulloch, 17 U.S. (4 Wheat.) at 421.

In this instance, the respondent served time in federal prison following his conviction for violating a panoply of federal criminal laws. Congress's power to enact those laws flowed from the Commerce Clause, and the respondent does not challenge their provenance. The inquiry here involves the constitutionality of a statutory scheme of federal civil commitment that operates after a defendant has been convicted, sentenced, and reached the brink of release.

That the operation of the Walsh Act is federal in nature is an important datum. The Supreme Court has made it transparently clear that a state may civilly commit a prisoner beyond the expiration of his sentence if the prisoner is determined under appropriate procedures to be sexually dangerous. See Kansas v. Hendricks, 521 U.S. 346, 350, 360, 371 (1997). But the source of the federal government's authority to commit is less clearly defined, and the statutory provision here in issue is limited in its application to federal action vis-à-vis persons in federal custody. See 18 U.S.C. § 4248(a). The question before us, then, is whether section 4248's civil commitment scheme is an appropriate exercise of congressional power.

The government argues that it is, pointing to both the Commerce Clause and the Necessary and Proper Clause. The respondent argues that it is not. In our view, federal authority to commit civilly, if constitutional at all, would seem to fit most comfortably among the auxiliary, implied powers conferred by the Necessary and Proper Clause. Consequently, we focus our inquiry there.

The civil commitment scheme spelled out in section 4248 is new, but it is not sui generis. Since the nineteenth century, Congress has provided for the commitment of convicts who, while in federal custody, are determined through appropriate procedures to be mentally ill. See, e.g., Act of Aug. 7, 1882, ch. 433, 22 Stat. 302, 330; Act of June 23, 1874, ch. 465, § 1, 18 Stat. 251, 251. More than six decades ago, Congress passed legislation dealing with this issue — and that legislation, in modified form, remains in force. See Act. of Sept. 7, 1949, ch. 535, § 1, 63 Stat. 686, 686-88 (codified as amended at 18 U.S.C. §§ 4244-4247); see also Act of June 25, 1948, ch. 645, 62 Stat. 683, 855-56 (codified as amended at 18 U.S.C. §§ 4241-4243). This legislation provides that persons in federal criminal custody, including those whose incarcerative terms are about to expire, may be civilly committed upon a determination that they suffer from a mental disease or defect and are dangerous. See 18 U.S.C. §§ 4245-4246.

Enacted many years prior to the passage of the Walsh Act, this earlier regime — a regime that we shall call, as a shorthand,

-10-

section 4246 — covered a wide array of mentally ill persons in federal custody, including pretrial detainees, persons who had been convicted and sentenced, and persons tried but found not guilty by reason of insanity. See id. §§ 4241-4247.

When a federal pretrial detainee challenged section 4246, the Supreme Court upheld it (and, thus, effectively upheld the potentially indefinite pretrial commitment of a mentally incompetent defendant). Greenwood, 350 U.S. at 375. In so doing, the Court endorsed the proposition that Congress may provide for the civil commitment of a person in federal custody who would be dangerous to society if released. See id. at 374; see also Jackson, 406 U.S. at 732; cf. Jones v. United States, 463 U.S. 354, 368-70 (1983) (stating that indefinite commitment of a dangerous person acquitted by reason of insanity does not violate due process); United States v. DeBellis, 649 F.2d 1, 3 (1st Cir. 1981) (similar). The Court reasoned that the law providing for civil commitment was constitutional, under the Necessary and Proper Clause, as "an assertion of authority, duly guarded, auxiliary to incontestible national power" to prosecute for federal crimes. Greenwood, 350 U.S. at 375.

We read Greenwood to hold, as a general matter, that civil commitment under a federal scheme targeted to those in federal criminal custody is within the scope of Congress's constitutional authority under the Necessary and Proper Clause. The respondent strives to limit this generalization by pointing out

-11-

that Greenwood involved a pretrial detainee, whereas he has at this juncture served his entire sentence. As we explain below, this distinction does not make a dispositive difference.

Both section 4246 and section 4248 are geared toward preventing the release of persons in federal custody who would, if set free, be dangerous to society because of mental illness. Compare 18 U.S.C. § 4246(a) (defining dangerousness as resulting "from a mental disease or defect"), with id. § 4247(a)(6) (defining sexual dangerousness to others as rooted in "a serious mental illness, abnormality, or disorder"). The primary difference between these two provisions is the condition that triggers possible commitment. On the one hand, section 4246 is triggered by the prospect of generalized danger arising from mental illness, traditionally conceived. On the other hand, section 4248 is triggered by discrete dangers arising from a particular manifestation of mental illness: sexually dangerous proclivities. In a sense, then, section 4248 is simply a specific application of section 4246, designed to forestall dangers presented by those who do not necessarily meet the criteria for commitment under the more general section 4246 scheme. Cf. Hendricks, 421 U.S. at 350-51 (explaining that state legislation specific to sexual dangerousness was enacted to bridge an analogous gap). Seen in that light, Greenwood is a formidable precedent.

In all events, the similarities between the two provisions are more salient than the differences. Most

-12-

importantly, under both provisions the authority to commit civilly is auxiliary to the longstanding federal power to prosecute and punish federal crimes. Greenwood places that authority within the compass of the Necessary and Proper Clause.

In point of fact, the case for constitutionality here may be even stronger than in Greenwood. There, the defendant was merely charged with having committed a federal crime. 350 U.S. at 369. Here, however, the respondent has already been found guilty of a crime. That data point is telling: "[t]he fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness." Jones, 463 U.S. at 364; see Hendricks, 521 U.S. at 358. Thus, civil commitment of one in the respondent's position entails proof of both future dangerousness and past dangerousness.

The respondent counters that, in working the constitutional calculus, the Greenwood Court noted that federal authority over the defendant "persist[ed]" because he was being detained pretrial when committed. 350 U.S. at 375. In contrast, the respondent has now served his sentence. Seizing on this sequencing, the district court distinguished Greenwood on the ground that federal power over the defendant there was unexhausted. Volungus, 599 F. Supp. 2d at 75-76.

This attempted distinction is more illusory than real. The government filed its petition for civil commitment in this case before the respondent's sentence had run its course. From that

-13-

time forward, the respondent remained, lawfully, in the uninterrupted legal custody of the BOP. See Rumsfeld v. Padilla, 542 U.S. 426, 435, 439 (2004); Wales v. Whitney, 114 U.S. 564, 572-74 (1885). No exhaustion has occurred because the government's authority over the respondent is tied to its lawful custody of him, up to the present time and continuing.

To be sure, it can be argued that continued confinement, beyond the expiration of the respondent's sentence, is unconstitutional. But the respondent's initial confinement was indisputably lawful, and when the government detains an individual involuntarily, it enters into a special relationship with that individual. As an integral part of that relationship, the government assumes a duty to care for and protect the individual while he remains in its custody. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989); Vélez-Diaz v. Vega-Irizarry, 421 F.3d 71, 80-81 (1st Cir. 2005); White v. United States, 780 F.2d 97, 103 (D.C. Cir. 1986); cf. United States v. Muniz, 374 U.S. 150, 164-65 (1963) (allowing federal prisoner to sue for negligence under the Federal Tort Claims Act).

This custodial duty typically faces inward. The government, for example, must provide the detained person with shelter, sustenance, and medical care. See, e.g., Farmer v. Brennan, 511 U.S. 825, 832 (1994); DeShaney, 489 U.S. at 199; Youngberg v. Romeo, 457 U.S. 307, 315 (1982). Nevertheless, some aspects of this duty face outward. For example, the government may

-14-

in certain circumstances have a responsibility "to avert the public danger likely to ensue from the release of . . . dangerous detainees." United States v. S.A., 129 F.3d 995, 999 (8th Cir. 1997); see White, 780 F.2d at 106 (finding a federal mental institution negligent in permitting a dangerous inmate to leave its grounds); see also Jones, 463 U.S. at 370 (stating that the Constitution permits commitment of a defendant acquitted by reason of insanity "until such time as he . . . is no longer a danger to himself or society"); cf. Restatement (Second) of Torts § 319 (1965) ("One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.").

The commitment scheme surrounding section 4248 is designed to facilitate the performance of this duty. That scheme is a variation of the protocol set out in section 4246 — a protocol that has long been thought constitutional. See United States v. Pinson, 542 F.3d 822, 838 (10th Cir. 2008); S.A., 129 F.3d at 999; United States v. Moses, 106 F.3d 1273, 1280 (6th Cir. 1997); United States v. Sahhar, 56 F.3d 1026, 1029 (9th Cir. 1995).

Congress may act in divers ways to ensure the proper discharge of the government's custodial duty. See, e.g., Muniz, 374 U.S. at 164-65; Ponzi v. Fessenden, 258 U.S. 254, 262-64 (1922); United States v. Quintana-Aguayo, 235 F.3d 682, 687 n.10 (1st Cir. 2000). Section 4248 reflects Congress's recognition of

-15-

the outward-facing aspects of this custodial duty.  The statute allows the government to retain custody of a prisoner who would be dangerous to others if released.  That step seems to be plainly adapted to the proper discharge of the government's custodial duty. See Sahhar, 56 F.3d at 1029; DeBellis, 649 F.2d at 3; see also United States v. Salerno, 481 U.S. 739, 747-49 (1987).  We agree with Justice Stevens who, though dissenting in Salerno, was compelled to concede how difficult it would be "to accept the proposition that the Government is without power to detain a person when it is a virtual certainty that he or she would otherwise kill a group of innocent people in the immediate future."  481 U.S. at 768 (Stevens, J., dissenting).

The most closely analogous cases — those under section 4246 — are consistent with this view.  Civil commitment proceedings under that (earlier) statute, involving mentally ill prison inmates in federal custody, have withstood challenges even though they result in federal commitment that persists beyond the expiration of the committed person's sentence.  See, e.g., United States v. Williams, 299 F.3d 673, 674-75, 678 (8th Cir. 2002); United States v. Anderson, 104 F.3d 359 (4th Cir. 1996) (table); United States v. Woods, 970 F. Supp. 711, 715-17, 722 (D. Minn. 1997).  These cases reinforce the notion that the government's custodial responsibilities with respect to a federal prison inmate do not come to an abrupt end upon the expiration of the inmate's sentence. In cases in which the federal government has uninterrupted custody

-16-

of a person who is demonstrably dangerous to others, it is appropriate for the government to take steps to mitigate that danger when the expiration of a sentence looms.

To say more on this subject would be supererogatory. Because Congress's formulation of section 4248 constitutes a reasonable effort to discharge an important aspect of the government's custodial duty, it falls within Congress's constitutional power to pass laws that are in service to its well-settled authority to make and enforce criminal laws and to maintain prisons.[1]

We have one final task. Even legislation that is otherwise necessary and proper must not stray past the boundaries of our system of federalism. See Jinks, 538 U.S. at 464. Even though civil commitment is traditionally a prerogative of the states, Tom, 565 F.3d at 506; United States v. Lapi, 458 F.3d 555, 563 (7th Cir. 2006), this does not mean that a federal civil commitment scheme is always and inevitably an impermissible infringement on traditional state power. See Greenwood, 350 U.S. at 375 (characterizing the regime created by section 4246 as a valid assertion of federal power); Sahhar, 56 F.3d at 1029

_____

[1] This means, of course, that the district court erred in treating section 4248 as a mechanism for confinement untethered to the respondent's original imprisonment. Volungus, 599 F. Supp. 2d at 78. Civil commitment is auxiliary to the respondent's sentence and, thus, falls within the broad grant of implied authority that flows from the Necessary and Proper Clause.

-17-

(explaining that section 4246 is not "an invasion of the general field of lunacy").

The decisive consideration is whether the federal scheme is "duly guarded" and sufficiently respectful of state sovereignty. Greenwood, 350 U.S. at 375. We believe that section 4248 passes through this screen. Taken as a whole, it constitutes a carefully circumscribed foray into the field of civil commitment. It is jurisdictionally limited and deferential to the primacy of state custody whenever possible.

It cannot be gainsaid that civil commitment under section 4248 has some trappings of the police power. Nevertheless, that fact does not argue persuasively in favor of striking it down. When the federal government exercises any of the powers granted to it by the Constitution, it is not a valid objection that the exercise may bring with it some incidents of the police power. See Raich, 545 U.S. at 29 & n.38; Lambert v. Yellowley, 272 U.S. 581, 596 (1926). It seems especially appropriate to apply this tenet where, as here, a federal statute seeks merely to assist in carrying out the federal government's custodial responsibilities.

We emphasize that section 4248 intrudes no further into the field of civil commitment than is reasonably necessary to discharge these custodial responsibilities. Under this provision, as under section 4246, federal custody is a precondition to the inauguration of commitment proceedings. Thus, section 4248 is

-18-

limited in application to persons with whom the federal government has a preexisting relationship.

Section 4248's grasp is as modest as its reach. For instance, the provision requires that a person committed thereunder be released when he is determined to be no longer sexually dangerous. 18 U.S.C. § 4248(d)(2). Such limitations, which ensure that a legitimate federal interest remains implicated throughout the duration of a commitment, are important. See United States v. Perry, 788 F.2d 100, 110 (3d Cir. 1986) (upholding a federal commitment statute in part because the statute recognized "the limits of congressional authority [by providing] for release of the detainee when the federal reason for detention ceases").

Furthermore, section 4248 defers to state custody whenever possible. Its commitment scheme operates as a gap-filler in situations in which states either cannot or do not wish to assume responsibility for sexually dangerous persons in federal custody. See United States v. Shields, 522 F. Supp. 2d 317, 328 (D. Mass. 2007); cf. S.A., 129 F.3d at 1000 (upholding section 4246 in part because that statute "applies only in those unique situations where suitable arrangements for state care and custody are unavailable").

Let us be perfectly clear. Although section 4248 is reminiscent in these respects of section 4246, it does not fully replicate the federal-state balance that is struck in section 4246. There are, for example, subtle differences in language with respect

-19-

to the efforts required of the Attorney General to find suitable state placements for persons subject to federal civil commitment. Compare 18 U.S.C. § 4246(a), (d), with id. § 4248(a), (d). But these differences pale in comparison to the common expression, shared by section 4248 and section 4246, of a clear preference for state placement, if and when available, of those committed federally. Both statutes require the Attorney General to make "all reasonable efforts" to cause a state to assume control over the committed person. Id. §§ 4246(d), 4248(d). Even if a state at first demurs, section 4248 directs the Attorney General to release the committed person to the state if the state later reverses its field. Id. § 4248(d)(1). On balance, then, we agree with the Eighth Circuit that the differences between sections 4246 and 4248 are not significant enough to alter the constitutional calculus. Tom, 565 F.3d at 507. We thus follow the lead of the Greenwood Court, 350 U.S. at 375, and hold that section 4248's civil commitment scheme passes constitutional muster.

## III. CONCLUSION

We need go no further. The exercise of a federal commitment power embodied in section 4248 operates to prevent the release into society at large of sexually dangerous persons as to whom the federal government has custodial responsibilities. Because that exercise is limited to cases in which the federal government has a custodial duty, and because the federal scheme respects state prerogatives in the field of civil commitment, we

-20-

conclude that it is consistent with both the letter and spirit of the Constitution.

**We reverse the order of the district court and remand to that court for further proceedings consistent with this opinion**.

— Dissenting Opinion Follows —

**LAPLANTE**, <u>**District Judge**</u> (dissenting).  Unlike my distinguished colleagues, I have serious concerns about whether the Walsh Act's provision authorizing federal civil commitment of sexually dangerous prisoners beyond the end of their federal criminal sentences is, in fact, necessary and proper to the exercise of Congress's enumerated powers -- or merely an encroachment on the states' traditional power to regulate sexually dangerous conduct.  <u>See</u> <u>United States</u> v. <u>Comstock</u>, 551 F.3d 274 (4th Cir. 2009) (declaring that provision unconstitutional), <u>cert. granted</u>, 129 S. Ct. 2828 (2009).  Neither the Supreme Court's specific decision in <u>Greenwood</u> v. <u>United States</u>, 350 U.S. 366 (1956) (upholding federal detention of incompetent defendants awaiting trial on federal charges), nor its broader jurisprudence under the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18, provides a clear answer to this difficult question.

Given that the Supreme Court is hearing oral argument in <u>Comstock</u> on January 12, 2010, and is likely to answer this question within the next six months, I would prefer to wait for its ruling rather than settle for either of the imperfect alternatives available to us now: remanding and creating potentially unnecessary work for the district court, or conversely declaring a major federal statute unconstitutional on debatable grounds. While it is true that the respondent here, like the respondent in <u>Comstock</u>, remains in federal custody pending the outcome on appeal, the majority's decision upholding the statute means that he will stay

-22-

there either way, at least in the short term. On balance, I see less harm than good in waiting for the Supreme Court. I respectfully dissent.