LIPEZ, Circuit Judge,
concurring in part and dissenting in part.
I join the majority’s thoughtful opinion, with the exception of its novel interpretation of the mail fraud statute. On that issue I respectfully dissent.
Three terms ago, in Loughrin v. United States, the Supreme Court interpreted the phrase “by means of’ in the bank fraud statute, 18 U.S.C. § 1344. — U.S. -, 134 S.Ct. 2384, 189 L.Ed.2d 411 (2014). Bank property, the Court held, is obtained “by means of’ a false or fraudulent statement only when that statement “is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control.” Id. at 2393. With federalism concerns in mind; the Loughrin Court sought to prevent the bank fraud statute from being used to prosecute conduct beyond the scope of the specific problem addressed by that statute’s enactment in 1984. Citing those federalism concerns, the majority applies the “naturally inducing” limitation to the mail fraud statute, 18 U.S.C. § 1341, a measure originally enacted in 1872 to address a much broader problem. We are the first court of appeals to extend Loughrin in this manner. Because this ruling ignores the Supreme Court’s own cautionary language in Loughrin, as well as differences in the text and purpose of the two statutes, I would not incorporate the Loughrin limitation into the mail fraud statute.
The majority bolsters its reliance on federalism concerns by citing Cleveland v. United States, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000), a case interpreting the term “property” in the mail fraud statute. Although Cleveland addresses the same statute at issue here, the concerns raised by the government’s use of the mail fraud statute in that case are inapplicable to this case. Consequently, I find the majority’s reliance on that precedent inapt.
*164 I.
The majority insists that the Supreme Court’s limiting interpretation of the bank fraud statute must be applied to the mail fraud statute because the words interpreted by the Court in Loughrin—“by means of’—also appear in the mail fraud statute. In so concluding, the majority relies heavily on a presumption that the same federalism concerns which drove the Loughrin Court to interpret that phrase narrowly in the bank fraud statute also apply to the mail fraud statute. To reach these conclusions, however, one must ignore both significant differences between the two statutes and critical parts of the Loughrin opinion.
To be sure, the threshold argument that the same words should be construed the same way is intuitively appealing. Indeed, the Supreme Court has noted that such a presumption can be a fair starting point for a statutory analysis “when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other.” Smith v. City of Jackson, 544 U.S. 228, 233, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). Importantly, however, the equivalent language here is not the product of contemporaneous drafting. The bank fraud statute was enacted more than a century after the original version of the mail fraud statute, and more than thirty years after the “by means of’ language was added to the mail fraud statute. See Jed Rakoff, The Federal Mail Fraud Statute, 18 Duq. L. Rev. 771, 772 (1980) (original mail fraud statute enacted in 1872); 62 Stat. 763 (1948) (modern mail fraud statute); Pub. L. No. 98-473, Title II, § 1108(a), 98 Stat. 2147 (1984) (bank fraud statute). While not dispositive, this substantial gap in time raises a threshold doubt as to the applicability of this presumption. See Smith, 544 U.S. at 233, 125 S.Ct. 1536.
Here, however, we have more than mere doubts about the applicability of the presumption. The Supreme Court in Loughrin explicitly instructed that applying such a presumption to the words at issue would be inappropriate:
[Wjhat relationships count -as close enough to satisfy the phrase “by means of’ will depend almost entirely on context. ... Language like “by means of’ is inherently elastic: It does not mean one thing as to all fact patterns—and certainly not in all statutes, given differences in context and purpose.
134 S.Ct. at 2394 n.8. Hence, in determining whether the “naturally inducing” formulation articulated in Loughrin applies to the mail fraud statute, we must compare the contexts, purposes, and language of the two statutes.
A. The Bank Fraud Statute
1. Context and Scope
The bank fraud statute was enacted in 1984 “to provide an effective vehicle for the prosecution of frauds in which the victims are financial institutions that are federally created, controlled or insured.” S. Rep. No. 98-225, at 377 (1983). According to the Senate Report, the need for such a law became apparent when the Supreme Court vacated the mail fraud conviction of a defendant who used a stolen credit card to purchase food and lodging. See id. (citing United States v. Maze, 414 U.S. 395, 396, 398, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974)). To satisfy the mailing element, the government in Maze relied on the post-purchase mailing of sales slips from the merchants to the bank that had issued the credit card. 414 U.S. at 397, 94 S.Ct. 645. The Court held that those mailings were not related closely enough to the fraudulent scheme to sustain a conviction for mail fraud. Id. at 405, 94 S.Ct. 645. Because the federal mail and wire fraud statutes re *165 quire the use of either the mail or an interstate wire, federal prosecutors were unable to pursue charges when one of those forms of communication was not used “for the purpose of’ committing a fraud against a bank. See id. at 404, 94 S.Ct. 645. In the wake of the Maze holding, Congress recognized that a “serious gap[ ] now exist[s] in federal jurisdiction over frauds against banks.” S. Rep. No. 98-225, at 377. Accordingly, it enacted a new statute to fill this gap.
Rather than focusing on mail or interstate wire communications, the bank fraud statute bases its jurisdiction “on the fact that the victim of the offense is a federally controlled or insured [banking] institution.” [17] M. at 378. Therefore, while the text of the bank fraud statute is “modeled on the present wire and mail fraud statutes,” ⅛ it differs in a key respect. Unlike those statutes, it specifies a victim that the fraud must harm, a bank. Rather than requiring only a “scheme or artifice to defraud,” 18 U.S.C. § 1341, the first prong of the statute requires a “scheme or artifice ... to defraud a financial institution,” id. § 1344(1). Likewise, in the second prong of the statute, the scheme is not simply “for obtaining money or property,” id. § 1341, but “to obtain any of the money! ] or other property owned by, or under the custody or control of, a financial institution,” id. § 1344(2).
In multiple respects, therefore, the bank fraud statute was written narrowly, reflecting its limited purpose—protecting banks.
2. The Loughrin Decision
Loughrin involved “a scheme to convert altered or forged cheeks into cash.” 134 S.Ct. at 2387. The defendant went door-to-door in Salt Lake City, pretending to be a Mormon missionary, and stole checks from residents’ mailboxes. Id. He altered those checks or, if he happened to find blank cheeks, completed them, and used them to purchase items at a Target store. Id. He then immediately returned the purchased items for cash. Id. Loughrin challenged his bank fraud conviction for this scheme, arguing that the provision of the statute under which he was convicted, § 1344(2), requires a specific intent to deceive a bank, which he did not possess. Id. at 2389. He posited that such an element must be read into § 1344(2) to prevent it from being applied to mundane frauds that did not target a bank, but happened to involve a check. Id. at 2392.
Acknowledging the legitimacy of Lough-rin’s point about federalizing ordinary frauds, the Court gave the example of a common fraudster who “passes off a cheap knock-off as a Louis Vuitton handbag.” Id. According to Loughrin’s theory, if the victim who purchases the handbag happens to pay with a check rather than with cash, this fortuity would make the crime bank fraud because the fraudster has made “false or fraudulent ... representations” and has carried out a scheme to obtain money “ ‘under the custody or control of [a] bank (the money in the victim’s checking account).” Id. (quoting 18 U.S.C. § 1344(2)). That approach would turn the statute into “a plenary ban on fraud, contingent only on the use of a check (rather *166 than cash).” Id. Aware of the ubiquity of checks in our financial system, the Court was wary of interpreting the statute in a manner that would “approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress,” id. (quoting Cleveland, 531 U.S. at 24, 121 S.Ct. 365), by “federalizing frauds that are only tangentially related to the banking system,” id. at 2393 (quotation omitted).
The Court disagreed with Loughrin, however, that to foreclose such an application of the bank fraud statute it had to read a specific intent requirement into § 1344(2).[18] Instead, the Court explained, Loughrin’s argument “fail[ed] to take account of a significant textual limitation on § 1344(2)’s reach.” ⅛ at 2393. Under that provision, “it is not enough that a fraud•ster scheme to obtain money from a bank and that he make a false statement.” Id. The clause also includes “a relational component,” id., a requirement that the criminal obtain the bank property “by means of’ the false statement, id. (quoting 18 U.S.C. § 1344(2)). That language “typically indicates that the given result (the ‘end’) is achieved, at least in part, through the specified action, instrument, or method (the ‘means’), such that the connection between the two is something more than oblique, indirect, and incidental.” Id.
The Court explained that the “relational component” is satisfied when “the defendant’s false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control.”[19] Id. Accordingly, the fraud must reach the bank or the custodian of the bank’s property, either directly or indirectly. Id. The standard is most clearly met when the misrepresentation or false statement is made to the bank itself, for example when a fraudster attempts to cash a forged cheek at a teller’s window. Id. But a counterfeit check can also be the “means” by which a fraud is accomplished when it is presented to a third party, as Loughrin presented his forged checks to Target. Id. Predictably, the merchant will forward the check to the bank in an attempt to receive reimbursement in the form of bank funds. Id. In either scenario, the check itself is a fraudulent representation, and it “naturally induc[es]” the bank to part with money.
What the “naturally inducing” standard precludes, the Court explained, is the prosecution of cases like that of the handbag fraudster. Id. 2394. In that scenario, the fraudster’s misrepresentation never reaches the bank, either directly or indirectly. Id. Unlike in Loughrin’s scheme, the check itself does not convey the misrepresentation because it is a “perfectly valid” check. ⅛ Nor does the purchaser pass the misrepresentation about the quality of the handbag on to the bank or any custodian of the bank’s property. Id. The bank fraud statute, the Court explained, “draw[s] a line at frauds that have some real connection to a federally insured bank—namely, frauds in which a false statement will naturally reach such a bank (or a custodian of the bank’s property).” Id. at 2394 n.8. Be *167 cause the handbag fraudster’s misrepresentation never reaches the bank (or a custodian), the bank fraud statute does not encompass that kind of fraud.
The Loughrin Court thus viewed the “by means of’ language through the lens of its federalism concerns about the scope of the bank fraud statute. Construing those words to require that the misrepresentation or false statement reach the bank or its custodian, either directly or indirectly, ensures that the “deceptions ... have some real connection to a federally insured bank, and thus implicate the pertinent federal interest.” Id. at 2394-95.
B. The Mail Fraud Statute
With respect to every concern prompting the Loughrin Court’s interpretation of the bank fraud statute, the mail fraud statute is distinguishable. The text of the statute, its purpose, and the federalism concerns implicated by its application are all manifestly different. Consequently, the majority has done exactly what the Lough-rin Court cautioned against—transferred the Court’s construction of the phrase “by means of’ to an inapt context.
1. The Text
At the heart of the majority’s argument is the contention that the same language should be construed the same way in related statutes. They emphasize that “other circuits have consistently applied precedents construing [the mail fraud statute] to the bank fraud statute.” This assertion of consistency, however, is flawed in two respects. First, the majority’s contention that courts treat the mail and bank fraud statutes uniformly is belied by the Lough-rin decision itself. Second, even if it were true that mail fraud precedents generally have been applied in bank fraud cases, it does not follow that every bank fraud precedent should apply in the mail fraud context.
Loughrin attempted to support his argument for reading the specific intent requirement of § 1344(1) of the bank fraud statute into § 1344(2) of the statute by citing McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a case that analyzed the mail fraud statute.[20] Id. at 2390-91. As noted above, the mail fraud statute criminalizes schemes “to defraud, or for obtaining money or property.” 18 U.S.C. § 1341. McNally held that Congress did not use the word “or” to convey a disjunctive meaning. 483 U.S. at 358-59, 107 S.Ct. 2875. Rather than describing a separate type of scheme, the Court held, the phrase “or for obtaining money or property” simply clarifies that the criminalized scheme “to defraud” must involve money or property. Id.
Loughrin argued that, accordingly, the comparable provision in the bank fraud statute (“to obtain any of the money[ ] ... or other property” of a bank) may not be read as a separate prong, but must be understood as a clarification of the statute’s first provision, which prohibits schemes “to defraud a financial institution.” 134 S.Ct. at 2390-92. Hence, like the first provision, it would include a specific intent requirement. The Supreme Court rejected this argument and held that “or” in the bank fraud statute, unlike “or” in the mail fraud statute, is disjunctive. Id. The Court thus demonstrated, in the very opinion relied upon by the majority for much of its argument, that a construction of one of the statutes does not always apply to the other.
The Loughrin Court, of course, based its decision in part on differences in language *168 and structure between the two statutes. The Court pointed out that, unlike the mail fraud provision, the clauses before and after “or” in the bank fraud statute were arranged so as to “indicat[e] that they have separate meanings.” Id. at 2391. Here, the majority argues that the'“by means of’ language is identical in both statutes, and, hence, the phrase should be construed consistently. Yet, in this instance, too, a significant difference between the two provisions counsels against a common interpretation.
The text of the mail fraud statute does not include' any reference to the person or entity harmed by the alleged fraud; the provision criminalizes frauds that use the mails without regard to the victim. Although the bank fraud statute was “modeled on” the mail fraud statute, see S. Rep. No. 98-225, at 378, its most distinctive feature is the inclusion of a specific victim—i.e., a bank. That difference was at the core of the Loughrin Court’s interpretation of the “by means of’ language. Emphasizing that the crime of bank fraud requires a connection between the fraudulent statement and the victim bank, the Court concluded that Congress must have intended “by means of’ to provide that “relational component.” 134 S.Ct. at 2393. Because no similar link between the misrepresentation and the victim is part of the crime of mail fraud, it does not inevitably follow that “by means of’ must be construed in the same way.[21]
Admittedly, when Congress incorporated language from the mail fraud statute into the bank fraud statute (and likely the. wire fraud statute as well), it anticipated some commonality in interpretation. See H.R. Rep. No. 901, 98th Cong., 2nd Sess., at 4 (1984) (endorsing the courts’ “current interpretations of the language” taken from 18 U.S.C. §§ 1341 & 1343); United States v. Bonallo, 858 F.2d 1427, 1432 (9th Cir. 1988) (“[T]he House Judiciary Committee, in considering the proposed bank fraud statute, expressly endorsed the broad reading courts have given the mail and wire fraud provisions.”). We cannot assume, however, that Congress intended to incorporate mail fraud precedents that had not yet been decided. See Loughrin, 134 S.Ct. at 2391 (“Loughrin’s reliance on McNally encounters a serious chronological problem. Congress passed the bank fraud statute in 1984, three years before we decided that case.”); United States v. Saks, 964 F.2d 1514, 1520-21 (5th Cir. 1992) (questioning the applicability of McNally to the bank fraud statute because it was decided after the statute’s enactment). Nor can we expect that Congress, in enacting the mail fraud statute a century and a half ago, would have anticipated the Loughrin Court’s recent interpretation of the “by means of’ language in the context of a different statute that did not yet exist. Contrary to the majority’s assertion, the chronology of the statutes’ enactment matters.
2. Purpose
As my textual comparison has intimated, the purpose of the mail fraud statute also does not support the imposition of Lough-rin’s limiting interpretation. The Loughrin Court’s interpretation of the “by means of’ language was premised on the narrow objective of the bank fraud statute to protect banks from fraud. Unlike the bank fraud statute, the mail fraud statute was not *169 enacted to protect a narrow class of victims. Rather, its purpose was to protect the public at large from a wide range of fraudulent schemes. See Cong. Globe, 41st Cong., 3d Sess. 35 (1870) (remarks of Rep. Farnsworth) (“[A]ll through this country thousands of innocent and unsophisticated peoplef ] ... are continually fleeced and robbed, and the mails are made use of for the purpose of aiding them in their nefarious designs”).
The broad purpose of the statute has led our circuit to hold that the mail fraud statute encompasses many different kinds of frauds, including those where the false statement does not reach the victim:
Nothing in the mail and wire fraud statutes requires that the party deprived of money or property be the same party who is actually deceived. The phrase “scheme or artifice ... for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,” 18 U.S.C. § 1341, is broad enough to include a wide variety of deceptions intended to deprive another of money or property.... We see no reason to read into the statutes an invariable requirement that the person deceived be the same person deprived of the money or property by the fraud. If, for example, the role of a government regulator is to protect the monetary interests of others, a scheme to mislead the regulator in order to get at the protected funds will affect “property rights”....
United States v. Christopher, 142 F.3d 46, 54 (1st Cir. 1998) (involving scheme to obtain assets of insurance companies by deceiving state insurance regulators).
Strikingly, this convergence requirement that we rejected in Christopher for the mail fraud statute (“an invariable requirement that the person deceived be the same person deprived of the money or property by the fraud”) is the essence of the “naturally inducing” standard adopted by the Supreme Court for the bank fraud statute in Loughrin. The Loughrin Court required that the false statement reach the victim bank, directly or indirectly. See 134 S.Ct. at 2394 n.8 (“drawing a line at ... frauds in which a false statement will naturally reach ... a bank (or a custodian of the bank’s property)”). In other words, the Loughrin standard requires that the bank or a custodian of its property be deceived, and that the bank or the custodian lose the bank’s money or property. That requirement was met in Loughrin because checks altered by the fraudster—i.e., the misrepresentations—reached the bank when Target submitted them for payment.
The majority argues that Loughrin’s standard does not require convergence because it specifically contemplates that bank property covered by the statute may be held (and thus lost) by a non-bank custodian as well as by a bank. See id. at 2389 (“[A] person violates § 1344(2)’s plain text by deceiving a non-bank custodian into giving up bank property that it holds.”); 18 U.S.C. § 1344(2) (stating that property “owned by” a bank, as well as property “under the custody or control of’ a bank, is within the statute’s scope). Therefore, an entity other than the bank itself may be deceived and may relinquish the bank’s property as a result of a covered fraudulent scheme. In such cases, however, the custodian that holds the bank’s property acts as a surrogate for the bank, standing in the bank’s place. Indeed, the Loughrin court referred to such custodians interchangeably with the bank itself. See id. at 2393 (“Section 1344(2)’s “by means of’ language is satisfied when, as here, the defendant’s false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control.”). Whether the property is under *170 the custody or control of the bank or of a non-bank custodian, it is still the bank’s property. The custodian is effectively acting as the bank, and the bank is victimized by the fraud. Hence, even if the surrogate custodian is the deceived party and/or the party relinquishing bank money, “the party deprived of money or property” is still “the same party who is actually deceived.” Christopher, 142 F.3d at 54.
In another attempt to avoid the convergence reading of the Loughrin standard, the majority invokes Justice Sealia’s hypothetical about Little Bobby’s attempt to obtain an extra cookie. Contrary to the majority’s suggestion, Justice Scalia used the example to explain that, under Lough-rin’s “naturally inducing” standard, Little Bobby would not have obtained the cookie “by means of’ his fib because “the lie did not make its way to the father.” Id at 2396 (Scalia, J., concurring). So, although he deceived his mother, and his deception worked, Little Bobby could not be charged with cookie fraud. The Loughrin majority responded without indicating whether they agreed with this depiction of their holding. Id. at 2394 n.8. Instead, they reemphasized that their interpretation of “by means of,” as it is used in the bank fraud statute, requires convergence. Id. (“All we say here is that the phrase, as used in § 1344(2), is best read, for the federalism-related reasons we have given ... as drawing a line at frauds ... in which a false statement will naturally reach such a bank (or a custodian of the bank’s property).”). With respect to other contexts, however, the majority refused to decide whether convergence is required. Id. (“Language like ’by means of is inherently elastic: It does not mean one thing as to all fact patterns—and certainly not in all statutes, given differences in context and purpose.”). Thus, the majority explicitly acknowledged, as we have already noted, that it may not be appropriate to apply the convergence standard to other statutes.
Having rejected the convergence reading of Loughrin’s “naturally inducing” standard, the majority must try to explain what that standard means. To this end, it says that Loughrin requires a “causal nexus” between the deception and the loss of property. Oddly, this phrase appears nowhere in the Loughrin decision. Instead, the majority seems to have invented the phrase by drawing on our own Christopher decision, where, having rejected the convergence requirement for the mail fraud statute, we acknowledged that, in both the mail and wire fraud statutes, “the deception must in fact cause the loss.”[22] Christopher, 142 F.3d at 53. The critical question, then, is what does the causal nexus standard imputed by the majority to Loughrin, and now incorporated by the majority into the mail fraud statute, mean if it does not signify convergence?
The majority says that the causal nexus standard is something “like proximate causation.” But they never define this standard, stating instead that it is “flexible.” Indeed, the standard is so flexible that we cannot predict what it will mean in any future case. We know that in Loughrin it meant that the false statement had to “reach the bank,” 134 S.Ct. at 2394 n.8; in Christopher, the majority says, it was met because the defendant’s actions “directly contradicted” his prior statements. Here, the majority suggests critically that the standard was not met because only “in the ensuing years” after receiving their fraud *171 ulent medical licenses did the doctors obtain funds from consumers and medical insurers. Is the majority imposing some temporal requirement on the causal connection between the deception and the loss of property? Would it have mattered in this case if the doctors had only used their fraudulent licenses to obtain money from consumers and insurers immediately after receiving those licenses? Does the passage of time somehow mean in this case that the fraud of the defendants did not “naturally induce” healthcare consumers to part with their money?
These unanswered questions, and the resulting uncertainty for the future application of the mail fraud statute, highlight the majority’s threefold mistake in its reading of Loughrin. First, without justification, they have incorporated Loughrin’s standard for bank fraud into the mail fraud statute. In an effort to minimize the consequences of that mistake, they deny that the “naturally inducing” standard of Loughrin is a convergence requirement— the party deceived must lose the property. Then, in place of that convergence standard, the majority offers a vague “causal nexus” standard that apparently means something' more than the present causation requirement of the mail fraud statute. In so doing, the majority has unwisely circumscribed the broad protective purpose of the mail fraud statute.
3. Federalism Concerns
The Loughrin Court’s federalism concerns about the bank fraud statute also do not apply to the mail fraud statute. Underlying the mail fraud statute is a federal interest in ensuring that the national mail system is not used to further fraudulent schemes. The bank fraud statute, by contrast, is based upon an interest in preventing federally regulated and insured banks from being victimized by fraud. The Loughrin Court’s federalism' concerns focused on the defendant’s contention that the bank fraud statute could be expanded beyond its narrow focus to be used as “a plenary ban on fraud, contingent only on the use of a check (rather than cash).” Loughrin, 134 S.Ct. at 2392.
The Court resolved this concern by finding a textual limitation in the “by means of’ language. By requiring that the fraudulent statement reach the bank that relinquishes money, the Court excluded from the scope of the bank fraud statute those frauds that are “only tangentially related” to the underlying federal interest in protecting banks. Id at 2393. To be sure, the “naturally inducing” standard of Loughrin could function the same way in the mail fraud statute as it does in the bank fraud statute. But imposing that restriction on the mail fraud statute would not exclude from prosecution those frauds that are “only tangentially related” to the federal interest in preventing the mails from being used in fraudulent schemes. The Loughrin standard has nothing to do with the mailing element. Hence, the federalism concerns of the Loughrin Court do not justify the narrowing interpretation adopted by the majority here.
Indeed, the mail fraud statute has been used for decades to prosecute frauds similar to the case at hand, where the fraudulent representations did not reach the entity whose property the scheme sought to obtain (or the custodian of that property). See, e.g., United States v. Greenberg, 835 F.3d 295 (2d Cir. 2016) (scheme to obtain money from credit card holders by deceiving payment processor and other intermediaries); United States v. Seidling, 737 F.3d 1155 (7th Cir. 2013) (scheme to obtain money from opposing parties by deceiving state small claims court); United States v. McMillan, 600 F.3d 434 (5th Cir. 2010) (scheme to obtain money from insureds by *172 deceiving state health insurance regulators); United States v. Blumeyer, 114 F.3d 758 (8th Cir. 1997) (scheme to defraud insurance policyholders and brokers by deceiving state insurance regulator); United States v. Granberry, 908 F.2d 278 (8th Cir. 1990) (scheme to obtain job as a school bus driver by deceiving state driver’s licensing authority); United States v. Brownlee, 890 F.2d 1036 (8th Cir. 1989) (scheme to obtain proceeds of automobile theft insurance policies by deceiving state authority certifying automobile titles). Permitting the mail fraud statute to continue covering such frauds would not, therefore, effect “a sweeping expansion of federal criminal jurisdiction” as the majority suggests. Loughrin, 134 S.Ct. at 2392 (quoting Cleveland, 531 U.S. at 24, 121 S.Ct. 365).
II.
The majority also finds support for its federalism concerns in Cleveland v. United States, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000). Just as the federalism concerns expressed in Loughrin are not applicable here, however, neither are those raised by the Cleveland Court. In Cleveland, the government asked the Court to adopt an expansive and unsupported definition of the term “property” in the mail fraud statute so that federal authorities could prosecute the defendant for a scheme to obtain a license issued by a state. Here, the government does not request such a textual expansion, nor has it charged a scheme directed against a state.
Cleveland involved a scheme to fraudulently obtain a video poker operating license by making false statements on an application to the state licensing authority. Id. at 15, 121 S.Ct. 365. Noting that the mail fraud statute is “limited in scope to the protection of property rights,” id. at 18, 121 S.Ct. 365 (quoting McNally, 483 U.S. at 360, 107 S.Ct. 2875), the Supreme Court held that licenses do not constitute property when they are in the hands of the licensing agency, id. at 20, 121 S.Ct. 365. The idea of licenses as government property, the Court noted, “strayfe] from traditional concepts of property.” Id. at 24, 121 S.Ct. 365. Regardless of any fees that the state may obtain during the licensing process, “the [sjtate’s core concern is regulatory,” id. at 20, 121 S.Ct. 365, “impli-cat[ing] the [gjovernment’s role as sovereign, not as property holder,” M. at 24,121 S.Ct. 365.
The Court also noted that there was no evidence Congress had intended to override the traditional definition of “property” by including licenses in the “property” protected by the mail fraud statute. Id. Moreover, the state had already created penalties for false statements made on license applications. Accordingly, defining licenses as property would “ ‘significantly change[ ] the federal-state balance’ in the prosecution of crimes.” Id. at 25, 121 S.Ct. 365 (quoting Jones v. United States, 529 U.S. 848, 858, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000)). Because Congress had not clearly stated that the term “property” included licenses, the Court declined to accept such an interpretation with its resultant policy implications.
Although the majority acknowledges that the government has not charged a scheme in which a state license was treated as property, it asserts that “the very same federalism concerns” underlie this case. In so doing, it misconstrues the federalism problem identified by the Cleveland Court. The Court hesitated to adopt a novel definition of “property” in Cleveland that could change the balance of federal-state power in the prosecution of crimes without a clear statement of Congressional intent. It did not imply, however, that the government is forbidden from bringing a case that otherwise fits within the bound *173 aries of the mail fraud statute simply because the case begins with an abuse of the state’s licensing authority. Cf. Pasquantino v. United States, 544 U.S. 349, 357, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005) (distinguishing Cleveland and upholding wire fraud conviction for scheme to defraud Canadian government of tax revenue); McMillan, 600 F.3d at 434 (upholding mail and wire fraud convictions for scheme deceiving state health insurance regulators).
Here, the government does not focus its mail fraud charge, as it did in Cleveland, on the use of false statements to obtain a license. Instead, it focuses on the use of the fraudulently obtained licenses to secure the money of patients (and their insurers and other payers) who received services from the improperly licensed defendant physicians. Contrary to the majority’s implication, the money of the patients and payers was not “far removed from” the defendants’ fraudulent scheme. Indeed, the object of the charged scheme and its fraudulent representations was the money the physicians could earn with their fraudulently obtained medical licenses. Their continued use of their fraudulent licenses to practice medicine and obtain patients’ money years after deceiving the Board of Medical Examiners demonstrates that the payments, not the license, were the object of the scheme. The use of the mail fraud statute to protect the property of members of the public in situations such as this fits comfortably within the intended scope of the mail fraud statute.
The majority argues that the mail fraud statute must be narrowed, or else “virtually any false statement in an application for a medical license could constitute a federal crime.” Permitting the statute to have such a broad scope, it asserts, would “im-permissibly infringe on the states’ ‘distinctively sovereign authority to impose criminal penalties for violations of licensing schemes.” (Quoting Cleveland, 531 U.S. at 23, 121 S.Ct. 365). The fact that a federal statute may be used to prosecute conduct that also implicates state concerns does not, however, mean that the federal government has “impermissibly infringe[d]” on the state’s sovereign authority. The federal and state governments often bring parallel prosecutions to vindicate their separate interests. See United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922) (“We have here two sov-ereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory.... [A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.”). Congress has determined that there is a significant federal interest in ensuring that the mails are not used in furtherance of fraudulent schemes. The Commonwealth might have invoked its own criminal statute to prosecute the defendants in this case for false statements in their license applications. But the Commonwealth’s interest does not prevent the federal government from also prosecuting them for a different crime that involves a distinct federal interest. See United States v. Volungus, 595 F.3d 1, 9 (1st Cir. 2010) (“When the federal government exercises any of the powers granted to it by the Constitution, it is not a valid objection that the exercise may bring with it some incidents of the [state’s] police power.”).
The government’s charging decision in this case was not an evasion of Cleveland. It was a recognition of Cleveland’s limited scope. The federalism concerns raised in that case are inapplicable here, and significant federal interests support the government’s application of the mail fraud statute in this case.
*174 III.
The convictions of the defendants in this case comport with the traditional understanding of the scope of the mail fraud statute applied by courts for decades.[23] The majority’s decision to incorporate into the mail fraud statute the Loughrin Court’s limiting interpretation of the bank fraud statute’s “by means of’ language will unnecessarily and unwisely constrain the federal government in its prosecution of fraud cases. Because the text, purpose, and long-standing application of the mail fraud statute do not support the novel limitation that the majority imposes on it, I respectfully dissent.

. The bank fraud statute states:
Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
18 U.S.C. § 1344.

. The Supreme Court has acknowledged that the text of the bank fraud statute's other provision, 18 U.S.C. § 1344(1), does require a specific intent to defraud a bank. Loughrin, 134 S.Ct. at 2389-90.

. As the Loughrin Court noted, § 1344(2) covers not only bank property in the bank's possession, but also "property 'owned by' the bank but in someone else's custody and control”—that is, bank property under the control of a non-bank custodian. 134 S.Ct. at 2389. As I discuss further below, the Lough-rin Court appears to have considered a custodian who possesses a bank's property to be acting as the surrogate of the bank, and therefore to be essentially interchangeable with the bank itself.

. As mentioned in footnote 2, the Supreme Court has held that § 1344(1) requires a specific intent to defraud a bank. Loughrin, 134 S.Ct. at 2389-90.

. Contrary to the majority's suggestion, our court's consistent treatment of the wire and mail fraud statutes does not advance their view. The wire fraud statute is simply a modern incarnation of the mail fraud statute, covering a "new” method of interstate communication. See Rakoff, supra, at 772 n.6. Like the mail fraud statute, it is worded broadly and does not protect a particular type of victim.

. Indeed, the requirement of the mail and wire fraud statutes that the defendant “obtain[ ] money or property by means of false or fraudulent pretenses,” 18 U.S.C. §§ 1341, 1343, compels the conclusion that "the deception must in fact cause the loss,” Christopher, 142 F.3d at 53.

. .Of course, if my position had prevailed, we would have to address defendants’ other arguments challenging their mail fraud convictions. I express no view on those arguments.